**LAW OFFICE OF ABRAHAM L. NIMAN**
Abraham L. Niman (SBN 326970)
12605 Ventura Blvd. #1088
Studio City, CA 91604
Phone: (805) 591-4018
abe@abeslaw.com

Attorney for Plaintiffs Nirav B. Savalia and
Shel Aesthetics, Inc.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **SHEL AESTHETICS, INC. dba NEWPORT BEACH PLASTIC SURGERY,** a California Corporation; **NIRAV B. SAVALIA**, an individual **dba SAVALIA PLASTIC SURGERY**,<br><br>Plaintiff,<br><br>vs.<br><br>**BLUE SHIELD OF CALIFORNIA LIFE & HEALTH INSURANCE COMPANY,** a California Corporation; and DOES 1 through 15, inclusive,<br><br>Defendant(s) | Case No.: 8:26-cv-01102-FWS-KES<br><br>**FIRST AMENDED COMPLAINT** |

Plaintiffs SHEL AESTHETICS, INC. dba NEWPORT BEACH PLASTIC SURGERY and NIRAV B. SAVALIA dba SAVALIA PLASTIC SURGERY (together, "Plaintiffs"), by and through their attorney, Abraham L. Niman, by way of this First Amended Complaint against BLUE SHIELD OF CALIFORNIA LIFE & HEALTH INSURANCE COMPANY and DOES 1 through 15 (collectively, "Defendants"), allege as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiffs are a medical provider with a principal place of business at 361 Hospital Road, Suite 530 in Newport Beach, CA 92663.

2. Defendant BLUE SHIELD OF CALIFORNIA LIFE & HEALTH INSURANCE COMPANY is a California Corporation engaged in providing and/or administering health care plans or policies in the State of California and contracted with the patient for the procedure at issue in Orange County, California.

3. Plaintiffs are ignorant of the true names and capacities of the certain defendants and therefore sues said defendants by the fictitious names, Does 1 through 15. Plaintiffs will amend this Complaint to show their true names and capacities when the same has been ascertained. Plaintiff is informed and believes and therein allege that each Defendant fictitiously named herein caused or contributed to the damage complained of by Plaintiffs and engaged in, participated in, and or ratified the wrongful conduct as set forth herein.

4. Plaintiffs are informed and believes and upon such information and belief alleges that there exists, and at all times mentioned existed, a unity of interests between Defendants and each of them, such that any individuality and separateness between them has ceased, and that said defendants, and each of them, are the agents, employees, and/or alter egos of one another, and in doing the things herein alleged, were acting within the course and scope of such agencies under the direction, consent, authority, request and ratification of each of the other defendants.

5. Plaintiffs are informed and believes and upon such information and belief alleges, that at all times mentioned herein, Defendants and each of them were authorized and empowered by each other to act, and did so act, as agents of each other, and all of the things herein alleged to have been done by them were done in the capacity of such agency. Plaintiff is informed and believes and based thereon alleges that Defendants were and are the agents, employees, partners, joint-ventures, co-conspirators, owners, principals, and employers of each other, and at all times herein mentioned were acting within the course and scope of that agency, partnership, employment, conspiracy, ownership or joint venture. Plaintiff is further informed and believes and thereon alleges that the acts and conduct herein alleged of each Defendant were known to, authorized by, and/or ratified by the other Defendants.

6. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under federal law, specifically the No Surprises Act (“NSA”), 42 U.S.C. § 300gg-111 *et seq*., which governs the Independent Dispute Resolution (“IDR”) process for certain out-of-network billing

disputes including those at issue here.

7. Venue is proper in the United States District Court for the Central District of California, pursuant to 28 U.S.C. § 1391, because a substantial part of the events giving rise to this action occurred within this district.

**PREAMBLE**

8. The Federal No Surprises Act ("NSA") became effective January 1, 2022. The NSA creates for medical providers a direct right to payment from insurers and health plans of the amount an Independent Dispute Resolution ("IDR") entity determines is owed for qualifying medical services. *See* 42 U.S.C. § 300gg-111(c)(6). This amount must be paid within thirty (30) days of the IDR entity's determination. *Id*.

9. Under the NSA, an insurer has 30 days from the date the bill is transmitted by the out-of-network ("OON") medical provider to pay or deny the claim. 42 U.S.C. §300gg-112(a)(3)(A-B). Insurers unilaterally determine their initial payment amount, often paying what the law refers to as a Qualifying Payment Amount ("QPA"). If the OON medical provider does not accept the insurer's initial payment as payment in full, the OON medical provider may initiate an "open negotiation period" with the insurer to attempt to negotiate a higher amount. *Id*. § (b)(1)(A). If the negotiations fail by the close of the open negotiation period, the OON medical provider may initiate the NSA's IDR process. *Id*. § (b)(1)(B).

10. However, the medical provider is precluded from billing the patient for any amount over and above the health plan's initial "QPA" payment ("balance billing"). In that way, the NSA ensures that the patient will be protected from liability for "surprise" out-of-network medical charges. *Id*.

11. If both parties participate in the NSA's IDR process, the process requires both parties to submit position statements and proposed offers of payment for the services at issue to a third-party IDR entity. *Id*. § (b)(5)(B)(i)(I). The IDR entity then evaluates both proposed offers based on several statutory factors and selects one as the appropriate OON payment for the services provided. *Id*. § (b)(5)(C). After an IDR determination, the non-prevailing party is required to pay any amount owed within 30 days. *Id*. § (c)(6).

**FACTUAL BACKGROUND**

12. On July 26, 2024, Plaintiffs provided medical treatment for an individual herein identified

as C.S. ("Patient C.S.") at Hoag Hospital Newport Beach, located in Newport Beach, California.

13. At the time of treatment, Patient C.S. was the beneficiary of a health plan issued and/or administrated by Defendants.

14. After treating Patient C.S., Plaintiffs submitted a Health Insurance Claim Form ("HCFA") medical bill to Defendants seeking payment for the procedure, itemized under Current Procedural Terminology ("CPT") codes, including one unit of CPT code 19357 in the amount of $99,950.

15. In response to Plaintiffs' HCFA, Defendants did not allow ***any*** payment to Plaintiffs.

16. On September 16, 2025, the arbitrator ruled in Plaintiffs' favor (DISP-3756974) and determined that the $99,950 payment offered by Plaintiff was the appropriate out-of-network rate for CPT 19357.

17. As an out-of-network provider, Plaintiffs do not have a network contract that would determine or limit payment for Plaintiffs' services to Defendant's members.

18. However, since the services were rendered emergently/inadvertently, the out-of-network medical treatment Plaintiff provided to the above patients is subject to reimbursement pursuant to the NSA, 42 U.S.C. § 300gg-11 et seq.

19. Pursuant to the NSA, an out-of-network provider reserves the right to dispute a health plan's reimbursement for qualifying out-of-network services and initiate a 30-day negotiation period. 42 U.S.C. § 300gg-111(c)(1)(A).

20. In these cases, Plaintiffs disputed Defendants' payment determinations and initiated the negotiation periods called for by the NSA. In effect, Plaintiffs were disputing Defendants' refusal to pay in full for all the procedures.

21. Pursuant to the NSA, if the payment dispute between the provider and insurer is not resolved during the negotiation period, the provider has the right to initiate arbitration under which the proper reimbursement amount is determined by a neutral arbitrator. 42 U.S.C. § 300gg-111(c)(1-5).

22. Plaintiffs initiated such arbitrations as called for by the NSA by sending Open Negotiation letters to Defendants.

23. Because the disputes were not resolved by the close of the open negotiation periods, Plaintiff initiated the NSA's IDR process by submitting Notices of IDR Initiation to the Department of

Health and Human Services to have the proper reimbursement amounts determined by a neutral IDR entity. 42 U.S.C. § 300gg-111(c)(1-5).

24. Plaintiffs forwarded a copy of each Notice of Initiation to Defendants as required.

25. To initiate the IDR process, Plaintiffs were required to access the federal IDR portal and affirmatively accept binding click-wrap terms and conditions governing participation in the IDR process.

26. Thereafter, Plaintiffs submitted a Notice of Offer together with documentation that supported Plaintiff's final offers for each case.

27. To participate in the IDR process through the submission of a Notice of Offer, Defendants were required to access the federal IDR portal and accept the same binding click-wrap terms and conditions agreed to by Plaintiffs. Specifically, Defendants were required to affirmatively manifest its assent to the terms and conditions of the IDR process by clicking an "I Agree," "Accept," or similarly worded button or checkbox at the bottom of the Notice of Offer for each case.

28. Those terms required Defendants to agree in part:

- that the final payment determination made by the certified IDR entity is binding upon the parties; and
- to pay the outstanding amount (if any) of the out-of-network rate that is Defendants' responsibility as determined by the certified IDR entity.

29. Defendants could not proceed with their IDR submission without accepting the terms and conditions set forth in the Notice of Offer for each case.

30. In this dispute, Defendants ***fully participated*** in the Arbitration through the submissions of information and final offers.

31. Pursuant to the NSA, the determinations of the arbitration award rendered under the above DISP numbers are legally "binding upon the parties involved." 42 U.S.C. § 300gg-111(c)(5)(E)(i)(I).

32. Pursuant to the NSA, if it is determined in arbitration that an additional amount remains due, the insurer has 30 days from the date of the arbitration award to issue the additional payment. 42 U.S.C. § 300-gg-111(c)(6).

33. However, Defendants failed to issue the arbitration payments to Plaintiff even though its deadlines to do so have well passed.

34. As of the date of this Complaint, over 140 days have elapsed since Defendants' deadlines to submit the award payments to Plaintiffs.

35. Accordingly, Plaintiffs seek herein all unpaid past due amounts as of the date the Court issues judgment, including interest, penalties and collection costs, which are in no event less than **$99,950** for the aforementioned arbitration awards.

**COUNT ONE**

**Cal. Bus. & Prof. Code § 17200 (Unfair Business Practices)**

**(Against All Defendants)**

36. Plaintiffs repeat and reallege the allegations set forth above as though fully set forth herein.

37. Defendants were required by Federal Law to pay the arbitration award.

38. Defendants' refusal to pay the legally binding arbitration award for work performed for the benefit of Defendants' insured constitutes an unlawful, unfair, and/or fraudulent business practice.

39. Plaintiffs were harmed.

40. Defendants' unlawful, unfair, and/or fraudulent business practice was a substantial factor in causing Plaintiff's harm.

**COUNT TWO**

**Quantum Meruit**

**(Against All Defendants)**

41. Plaintiffs repeat and reallege the allegations set forth above as though fully set forth herein.

42. Plaintiffs provided a benefit to Defendants by providing necessary medical care to Defendant's insured.

43. Defendants and its insured accepted the benefit of Plaintiffs' services knowing that payment was expected.

44. Defendants have refused to pay the legally binding payment award for the services Plaintiffs rendered.

45. Plaintiffs were harmed.

46. Defendants' conduct was a substantial factor in causing Plaintiffs' harm.

**<u>COUNT THREE</u>**

**Unjust Enrichment**

**(Against All Defendants)**

47. Plaintiffs repeat and reallege the allegations set forth above as though fully set forth herein.

48. Plaintiffs provided a benefit to Defendants by providing necessary medical care to Defendant's insured.

49. Defendants and its insured accepted the benefit of Plaintiffs' services knowing that payment was expected.

50. Defendants have refused to pay the legally binding payment award for the services Plaintiff rendered.

51. It would be unjust to allow Defendants to reap the benefits of Plaintiffs' medical service without paying.

**<u>COUNT FOUR</u>**

**Common Count - Goods and Services Rendered**

**(Against All Defendants)**

52. Plaintiffs repeat and reallege the allegations set forth above as though fully set forth herein.

53. Defendants requested by words or conduct that Plaintiffs perform medical treatment upon Defendants' insured.

54. Plaintiffs performed the medical treatment upon Defendants' insured.

55. Defendants have refused to pay for Plaintiffs' medical treatment.

**<u>COUNT FIVE</u>**

**Common Count - Money Had and Received**

**(Against All Defendants)**

56. Plaintiffs repeat and reallege the allegations set forth above as though fully set forth herein.

57. Defendants received money from their insured that was intended to pay for the insured's medical treatment, such as the treatment Plaintiffs provided.

58. Furthermore, Defendants received the monetary value of Plaintiffs' medical treatment.

59. Defendants refused to pay Plaintiffs the reasonable value of the treatment.

**COUNT SIX**

**Breach of Implied-in-Fact Contract**

**(Against All Defendants)**

60. Plaintiffs repeat and reallege the allegations set forth above as though fully set forth herein.

61. By ***fully participating*** in the arbitration and opting to refrain from employing the statutory method for challenging the arbitration award, Defendants have impliedly accepted the award and agreed to abide by the Federal Law requiring payment of the award.

62. Defendants have breached this implied contract by refusing to pay Plaintiff for the medical services rendered.

63. Plaintiffs were harmed.

64. Defendant's conduct was a substantial factor in causing Plaintiffs' harm

**COUNT SEVEN**

**Promissory Estoppel**

**(Against All Defendants)**

65. Plaintiffs repeat and reallege the allegations set forth above as though fully set forth herein.

66. By ***fully participating*** in the arbitration and failing to employ the statutory method for challenging the arbitration award, Defendants have impliedly accepted the award and agreed to abide by the Federal Law requiring payment of the award.

67. Plaintiffs reasonably relied upon Defendant's implied promise to pay the award.

68. Plaintiffs were harmed.

69. Plaintiffs' reasonable reliance on Defendant's implied promise was a substantial factor in causing Plaintiffs' harm.

**COUNT EIGHT**

**CONFIRMATION OF IDR DETERMINATION**

**(Against All Defendants)**

70. Plaintiffs repeat and reallege the allegations set forth above as though fully set forth herein.

71. The NSA provides that "A determination of a certified IDR entity under subparagraph (A)—(I) shall be binding upon the parties involved, in the absence of a fraudulent claim or evidence of misrepresentation of facts presented to the IDR entity involved regarding such claim; . . ." 42 U.S. Code § 300gg-111(c)(5)(E)(i).

72. Defendants did not present any facts to the IDR entity concerning an alleged fraudulent claim or misrepresentation of facts.

73. Defendants did not move to vacate any of the Awards under 9 U.S.C. § 10(a)(1)-(4) as provided for in the NSA.

74. Defendants failed to issue the IDR determination payments in satisfaction of the Awards.

75. Confirmation of the Awards does not require judicial review of the factual or legal findings of the IDR determination.

76. Absent a motion to vacate, the Awards must be confirmed. *See Agag v. Cigna Health and Life Insurance Co.,* No. 3:25-cv-00498, 2026 U.S. Dist. LEXIS 82515 (D. Conn. April 15, 2026).

77. It is against equity and good conscience to deprive Plaintiff a remedy to enforce "binding" Awards issued in accordance with federal law.

78. Accordingly, Plaintiffs bring this action for an Order confirming IDR Awards for all of the aforementioned DISP Arbitration Awards.

**COUNT NINE**

**VIOLATION OF THE FEDERAL NO SURPRISES ACT REGARDING THE NON-PAYMENT OF BINDING AWARDS**

**(Against All Defendants)**

79. Plaintiffs repeat and reallege the allegations set forth above as though fully set forth herein.

80. A party is permitted to initiate the IDR process called for by the NSA if the parties are unable to agree on a payment rate during the NSA's negotiation period. 42 U.S.C. § 300gg-111(c)(1-5).

81. In the instant case, the parties were unable to agree on the out-of-network rate for the services provided, and Plaintiff therefore initiated and proceeded to the IDR process called for by the NSA.

82. The certified independent dispute resolution entity assigned to the aforementioned disputes awarded Plaintiff in excess of Defendants' payments.

83. According to the NSA, Defendants had thirty (30) days to remit the IDR determination payments to Plaintiff. 42 U.S.C. § 300gg-111(c)(6).

84. Defendants failed to make any of the payments within thirty (30) days and, as of the date of the filing of this Second Amended Complaint, Defendants have failed to remit the IDR determination payments to Plaintiff.

85. As such, Defendants have failed to comply with the requirements of the NSA.

86. Accordingly, due to Defendants' failure to comply with the NSA's requirements, Plaintiffs have been damaged in an amount no less **<u>$99,950</u>**.

**<u>COUNT TEN</u>**

**BREACH OF EXPRESS CONTRACT (CLICK-WRAP)**

**(Against All Defendants)**

87. Plaintiffs repeat and reallege the allegations set forth above as though fully set forth herein.

88. As to the aforementioned IDR disputes, Plaintiffs initiated the NSA's IDR process by submitting a Notice of IDR Initiation to the Department of Health and Human Services via the NSA's federal IDR portal for each case.

89. Thereafter, the parties were presented with IDR participation terms, including the federal IDR portal's Terms of Use and the CIDRE's participation agreement, which required the parties' consent to be bound by the CIDRE's final payment determination and to pay the amount determined by the CIDRE. Each party was required to accept the NSA's IDR participation terms prior to submitting an IDR offer, uploading documents and proceeding with the IDR.

90. Defendants provided affirmative consent to the IDR's participation terms by checking a box and/or clicking "I agree."

91. The parties' mutual agreement to accept and comply with the CIDRE's determination is sufficient consideration.

92. The CIDRE issued written final determinations in DISP-3159766 and DISP-3159771 awarding Plaintiff far in excess of Defendants' allowance for the medical services Plaintiff rendered to Defendants' member.

93. Under the express terms of the click-wrap agreement, Defendants were required to pay the Award.

94. Defendants failed to pay the Award.

95. To date, Defendants have not paid the Awards.

96. The NSA does not preempt a claim for breach of contract. *See Mod. Orthopaedics of NJ v. Premera Blue Cross*, Case No. 2:25-cv-01807 (BRM) (JSA), 2025 U.S. Dist. LEXIS 215824, at * 32 (D.N.J. Nov. 3, 2025) (citing *Kennedy v. UnitedHealth Grp. Inc.*, No. 25 CIV. 432, 2025 U.S. Dist. LEXIS 117870, 2025 WL 1725147, at * 8-9 (S.D.N.Y. June 20, 2025) (holding breach of contract and unjust enrichment claims for failure to pay for patient's emergency care were not preempted by the NSA).

97. The click-wrap agreement constitutes a valid, express contract under Connecticut law, supported by mutual consideration, including Plaintiff's opportunity to obtain binding dispute resolution and Defendants' participation in the NSA's IDR process and agreement to be bound by the outcome.

98. Defendants breached the express click-wrap contract by failing to pay the amount determined by the CIDREs.

99. Defendants' failure to pay the Awards constitutes a material breach of contract.

**COUNT ELEVEN**

**BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

**(Against All Defendants)**

100. Plaintiffs repeat and reallege the allegations set forth above as though fully set forth herein.

101. The click-wrap agreement constitutes a valid, express contract under California law

governing the parties' agreement to participate in the NSA's IDR process and to pay the Awards as determined by the CIDREs.

102. Defendants acted in bad faith by refusing to pay the Awards as determined by the CIDREs despite its agreement to be bound by the CIDRE's final payment determination.

103. Defendants' conduct was undertaken to avoid its payment obligations and to delay or frustrate Plaintiffs' right to receive payment.

104. Defendants' actions deprived Plaintiffs of the benefit of its bargain.

105. Plaintiffs suffered damages in the unpaid Awards as determined by the CIDREs.

## COUNT TWELVE

## THIRD-PARTY BENEFICIARY

## (Against All Defendants)

106. Plaintiffs repeat and reallege the allegations set forth above as though fully set forth herein.

107. The IDR process established under the NSA requires both providers and insurers to enter into binding agreements with the Centers for Medicare and Medicaid Services ("CMS") as a condition of participation.

108. These agreements require both parties to be bound by the payment of CIDRE determinations.

109. The click-wrap agreement with CMS for the IDR process is expressly intended to benefit both healthcare providers and healthcare insurance carriers by ensuring fair and enforceable reimbursement for medical services rendered.

110. The requirement that providers who prevail in the IDR process be paid in accordance with IDR determinations demonstrates that healthcare providers were intended, not incidental, beneficiaries of Defendant's click-wrap agreement.

111. Plaintiffs are members of the class of intended beneficiaries of Defendants' click-wrap agreement with CMS.

112. Defendants' refusal to comply with the binding IDR determinations frustrates the purpose of the click-wrap agreement and deprives Plaintiff of the benefits intended to be conferred.

113. Accordingly, Plaintiffs are entitled to enforce Defendants' obligations as an intended third-party beneficiary.

**<u>COUNT THIRTEEN</u>**

**DECLARATORY JUDGMENT**

**(Against All Defendants)**

114. Plaintiffs repeat and reallege the allegations set forth above as though fully set forth herein.

115. An actual and present controversy exists between Plaintiffs and Defendants concerning Defendant's obligation to pay the Awards as determined by the CIDREs.

116. By refusing to pay the Awards despite demands, Defendants seemingly contend that it is not required to do so, or that payment may be delayed or avoided, notwithstanding the CIDREs' final determination.

117. Defendants are obligated to pay the amount determined by the CIDREs and there is no appeal, complaint, or administrative process that stays Defendants' payment obligation.

118. A declaratory judgment would resolve the Parties' dispute and clarify their respective rights and obligations.

119. Plaintiffs seek a declaration that Defendants are obligated to pay the Awards as determined by the CIDREs in full and without delay.

**<u>COUNT FOURTEEN</u>**

**ACCOUNT STATED**

**(Against All Defendants)**

120. Plaintiffs repeat and reallege the allegations set forth above as though fully set forth herein.

121. Plaintiffs rendered medical treatment to Defendants' members for which Defendants were financially responsible.

122. Plaintiff submitted HCFAs to Defendants reflecting amounts due for the medical treatment it rendered to Defendant's members.

123. After the parties failed to resolve the payment dispute at the close of the open negotiation

periods as described herein, Plaintiff initiated the NSA's IDR process.

124. The CIDREs issued written final determinations establishing the amount Defendants owed to Plaintiff for the medical services it rendered to Defendants' members.

125. Defendants received the CIDRE's written final determinations and did not move to vacate any of the Awards, as provided for under the under the parameters described in paragraphs (1) through (4) of section 10(a) of title 9. *See* 42 U.S.C. § 300gg-111(c)(5)(E)(i)(II).

126. Defendants' failure to seek recourse under 9 U.S.C. § 10(a) constitutes an implied agreement that the CIDREs final determinations pursuant to the Awards are correct.

127. Defendants have failed to pay the Awards as determined by the CIDREs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

a. For an Order confirming the arbitration awards issued under DISP-3756974;

b. For an Order directing Defendants to pay Plaintiffs $99,950;

c. For declaratory relief as requested;

d. For actual damages in the amount of $99,950;

e. For restitution in the amount of $99,950;

f. Pre- and post-judgment interest; and

g. For such other and further relief as the Court may deem just and equitable

Dated: June 17, 2026.

By: [signature]

Abraham L. Niman, counsel for Plaintiffs